## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JACKSANDER CESARIO SOUZA**, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **Case No.: 1:25-cv-12461** |
| ) | |
| **PATRICIA H. HYDE**, Acting Field Office ) | |
| Director, Immigration and Customs ) | **PETITION FOR WRIT OF** |
| Enforcement, Enforcement and Removal ) | **HABEAS CORPUS** |
| Operations, Boston Field Office; **ANTONE** ) | |
| **MONIZ**, Superintendent, Plymouth County ) | |
| Correctional Facility; **MICHAEL KROL**, ) | |
| New England Special Agent in Charge, ) | |
| Homeland Security Investigations; **TODD** ) | |
| **LYONS**, Acting Director, Immigration and ) | |
| Customs Enforcement; **KRISTI NOEM**, ) | |
| Secretary, Department of Homeland ) | |
| Security; **PAMELA BONDI**, Attorney ) | |
| General of the United States. ) | |
| ) | |
| Respondents. ) | |

## <u>INTRODUCTION</u>

1.      Petitioner Jacksander Cesario Souza has been unlawfully detained by the Department of Homeland Security ("DHS") since approximately June 12, 2025.

2.      Mr. Cesario Souza is a 19-year-old young man from Brazil. In 2021, as a teenager, he fled his home in Brazil after being shot by gang members and came to the United States with his mother to seek asylum. After he entered the United States, Mr. Cesario Souza was placed in removal proceedings pursuant to 8 U.S.C. § 1229a

3.      On June 12, 2025, Mr. Cesario Souza was arrested by federal agents and placed in the custody of U.S. Immigration and Customs Enforcement ("ICE"). He was detained at

Plymouth County Correctional Facility ("Plymouth") in Plymouth, Massachusetts.

4.     Mr. Cesario Souza requested a custody redetermination hearing before an Immigration Judge ("IJ"). A hearing was held on July 17, 2025, during which Immigration Judge Donald Ostrom found that Mr. Cesario Souza was eligible for bond, not a danger to the community, and any flight risk could be ameliorated with the setting of a $3,000 bond.

5.     Despite the IJ's order setting bond, ICE refused to accept payment from Mr. Cesario Souza's family, stating that he was not "bondable" because DHS had filed Form EOIR-43, Notice of ICE Intent to Appeal Custody Redetermination ("Form EOIR-43"). Ex. 1.  This filing within one business day of the IJ's bond decision triggered the automatic stay of release under 8 C.F.R. § 1003.19(i)(2).

6.     DHS then filed a Form EOIR-26, Notice of Appeal ("Form EOIR-26"), within ten business days of the EOIR-43, blocking the IJ's order during the pendency of the appeal to the Board of Immigration Appeals ("BIA"). Ex. 2.

7.     To this day, Mr. Cesario Souza languishes in immigration detention. His continued custody, and DHS's reliance on the auto stay provision, violates the Due Process Clause of the Fifth Amendment and is ultra vires in violation of 8 U.S.C. 1226(a).

8.     Accordingly, by this Petition, Mr. Cesario Souza requests that the Court order his immediate release from detention upon the payment of $3,000 bond.

## JURISDICTION & VENUE

9.     The U.S. District Court for the District of Massachusetts has jurisdiction to adjudicate the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question).

10.     The U.S. District Court for the District of Massachusetts is the proper venue to

hear Mr. Cesario Souza's petition because Mr. Cesario Souza is currently detained at Plymouth within the Commonwealth of Massachusetts.

## <u>REQUIREMENTS OF 28 U.S.C. § 2243</u>

11.     The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to the respondent "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require the respondent to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

12.     Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## <u>PARTIES</u>

13.     The Petitioner, Jacksander Cesario Souza, is a national of Brazil who is currently detained by ICE at Plymouth.

14.     Respondent Patricia Hyde is the New England Field Office Director for ICE. She is a legal custodian of Mr. Cesario Souza and is named in her official capacity.

15.     Respondent Antone Moniz is the Superintendent of Plymouth and has physical and administrative custody over Mr. Cesario Souza. He is named in his official capacity.

16.     Respondent Michael Krol is the New England Special Agent in Charge for Homeland Security Investigations for ICE. He is a legal custodian of Mr. Cesario Souza and is named in his official capacity.

17.    Respondent Todd Lyons is the Acting Director for ICE. He is a legal custodian of Mr. Cesario Souza and is named in his official capacity.

18.    Respondent Kristi Noem is the Secretary of the U.S. Department of Homeland Security ("DHS"). She is a legal custodian of Mr. Cesario Souza and is named in her official capacity.

19.    Respondent Pamela Bondi is the Attorney General of the United States. She is a legal custodian of Mr. Cesario Souza and is named in her official capacity.

## FACTS

### A.    Background

20.    Mr. Cesario Souza was born in Brazil on August 2, 2006. In 2021, he and his mother fled Brazil and entered the United States.

21.    After entering the United States, he was placed in removal proceedings in the Chelmsford Immigration Court.

22.    Since Mr. Cesario Souza's 2021 entry, he has built a life in the United States. He moved to Milford, Massachusetts. He has worked hard to support himself and his mother, cleaning cars and houses, working in construction, and as a pet groomer.

23.    Prior to his detention, Mr. Cesario Souza attended several court hearings at the Chelmsford Immigration Court.

24.    On June 12, 2025, Mr. Cesario Souza was arrested by ICE outside his home in Milford, Massachusetts. Since that date, he has been detained by ICE at Plymouth.

### B.    Mr. Cesario Souza's Detention and Bond Hearing

25.    Congress has granted the Attorney General discretion to decide whether to detain or release certain noncitizens pending a removal decision.  *See* 8 U.S.C. § 1226(a). The Attorney

General has delegated that authority to IJs. 8 C.F.R. §§ 1003.19; 1236.1. The discretionary

detention provision, 8 U.S.C. § 1226(a), applies only to noncitizens without certain criminal

convictions. It contrasts with the mandatory detention provision, 8 U.S.C. § 1226(c), which

applies to noncitizens convicted of certain criminal offenses or involved in terrorist activities and

requires continued detention.

26.    Because Mr. Cesario Souza has no criminal record, he was arrested and detained

under 8 U.S.C. § 1226(a).

27.    When a noncitizen is detained under § 1226(a), DHS makes the initial custody

determination, but the detainee can request reconsideration by an IJ. Here, DHS initially detained

Mr. Cesario Souza without bond. On July 7, 2025, Mr. Cesario Souza requested a bond

redetermination hearing in front of an IJ.

28.    At the bond redetermination hearing on July 17, 2025, the IJ heard evidence and

argument from Mr. Cesario Souza and the government. DHS argued that Mr. Cesario Souza is

subject to mandatory detention under a different provision, 8 U.S.C. § 1225(b)(2)(A), which

governs detention for noncitizen "applicants for admission"—certain new arrivals to the country.

In the alternative, DHS argued that Mr. Cesario Souza is a flight risk and that no amount of bond

could ameliorate that risk. Mr. Cesario Souza emphasized his strong ties to the community and

submitted multiple letters of support from family and friends.

29.    In accordance with longstanding precedent and practice, the IJ rejected DHS's

argument that Mr. Cesario Souza is subject to mandatory detention. Ex. 3, Memorandum

Concerning the July 17, 2025, Decision of the Immigration Court, at 4 ("Moreover, it has been

longstanding EOIR and DHS practice to apply to section 236(a) of the Act to inadmissible aliens

already residing in the country, and the Court found that DHS has cited no controlling or

persuasive authority for their position."). The IJ also made specific findings of fact that Mr.

Cesario Souza is not a danger and presented some flight risk that could be offset by the setting of

a bond. *Id.* at 5. The IJ set a $3,000 bond. *Id.*

30.     The next day, DHS filed a Form EOIR-43, unilaterally triggering the automatic

stay provision of 8 C.F.R. § 1003.19(i)(2). *See* Ex. 1. DHS then filed a Form EOIR-26 within ten

business days of the EOIR-43, blocking the IJ's order during the pendency of the appeal to the

Board of Immigration Appeals. *See* Ex. 2.

31.     Under the automatic stay provision of 8 C.F.R. § 1003.19(i)(2), DHS—the

prosecutor—is not bound by the IJ's determination. The prosecutor disagreed with the IJ's

decision and unilaterally overrode the order simply by filing a Form EOIR-43.

32.     Mr. Cesario Souza now remains in custody in contravention of the IJ's order.

DHS's bond appeal to the BIA can take months and as explained more fully below, the appeal's

resolution may not immediately end the automatic stay.

**C.     Automatic Stay Regulation**

33.     The relevant regulations provide a mechanism for DHS to automatically stay an

IJ's custody order while the government appeals the decision. This mechanism involves no

neutral adjudicator considering the merits. Rather, it allows the prosecutor DHS—who lost

before the IJ—to unilaterally stay the IJ's decision.

34.     Regulations provide that DHS's automatic stay will lapse in 90 days absent a BIA

decision on the appeal, but there are multiple avenues for extension. 8 C.F.R § 1003.36(c)(4).

For example, if the BIA does not issue a decision in the 90-day window, DHS can then seek an

additional discretionary stay from the BIA. 8 C.F.R. § 1003.6(c)(5). The automatic stay remains

in effect for another 30 days while the BIA decides whether to grant a discretionary stay. *Id.*

35.     Likewise, even if the BIA rules in favor of Mr. Cesario Souza on appeal and authorizes his release on bond, that release is automatically stayed for five more business days to give DHS a chance to refer the case to the Attorney General. 8 C.F.R. § 1003.6(d). Then, if DHS refers the case to the Attorney General, the automatic stay is extended for another 15 days. *Id.* The Attorney General may stay release for the pendency of the case. *Id.* There is no prescribed time limit for final resolution of the custody determination, meaning an individual may remain in detention indefinitely.

36.     In sum, Mr. Cesario Souza has no way of knowing how long this automatic stay will last and has no opportunity to challenge the stay. In practice, the automatic stay regulation renders the IJ's custody decisions ineffectual and results in the unconstitutional incarceration of persons who, like Mr. Cesario Souza, have been found to be neither a danger to the community nor a risk of flight upon the posting of a bond. If DHS disagrees with a custody decision, it can keep Mr. Cesario Souza detained for a *minimum* of 90 days, without a truly discernable end point.

37.     Meanwhile, Mr. Cesario Souza is in custody and his conditions of confinement are indistinguishable from criminal incarceration. He is separated from family, housed in a facility with criminal defendants, and subject to Plymouth's detention rules.

## LEGAL FRAMEWORK

38.     The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be … deprived of life, liberty, or property, without due process of law." Under the Due Process Clause, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 748, 755 (1987). Detention "for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v.*

*Louisiana*, 504 U.S. 71, 80 (1992); *see also Trump v. J.G.G.*, 604 U.S. --- 145 S. Cit. 1003, 1006 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439 (1993)). The automatic stay of Mr. Cesario Souza's release violates his rights to substantive and procedural due process.

39.     The automatic stay regulation is also an *ultra vires* regulation that unlawfully grants authority to DHS that Congress has delegated only to the Attorney General. *See* 8 U.S.C. § 1226(a).

**A.     Substantive Due Process**

40.     For immigration detainees, as with other civil detainees, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Detention by the government violates due process in civil proceedings *unless* "a special justification . . . outweigh[s] the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690.

41.     The automatic stay regulation was originally promulgated in October 2001, in response to the September 11 terrorist attacks, without any opportunity for public comment.

42.     Its promulgation marked a drastic change in practice. Before the automatic stay, there was only one route to stay an IJ's custody determination: a discretionary stay from the BIA. The Immigration and Nationality Service (DHS's predecessor) was required to demonstrate to the BIA that it was likely to succeed on the merits and would suffer irreparable harm in the interim. The automatic stay provided a second, much easier route: simply filing a short Form EOIR-43, without any need for an adjudicator to weigh in.

43.    The purported purpose of the automatic stay is to protect the public and "enhance agencies' ability to effect removal should that be the ultimate final order in a given case." *Executive Office of Immigration Review; Review of Custody Determination*, 71 Fed. Reg. 57873, 57874 (Oct. 2, 2006).  However, in this case, a neutral decision-maker, an IJ, has already found that Mr. Cesario Souza is not a danger to the public or a risk of flight upon the posting of a bond.

44.    The government has no special or compelling justification to continue detaining Mr. Cesario Souza, and certainly not an interest that outweighs Mr. Cesario Souza's interest in avoiding government restraint. *See Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077 (N.D. Cal. 2004) ("The regulation, which permits unilateral government detention of individuals without a case-by-case determination after a reasoned finding that they do not pose threat to safety or a risk of flight, violates the Due Process Clause because no special justification exists that outweighs the individual's constitutionally protected interest in avoiding physical restraint."); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 669 (D.N.J. 2003) ("[T]he Government has not shown that any 'special justification' exists which outweighs Petitioner's constitutional liberties so as to justify his continued detention without bail.").

45.    Therefore, the government's application of the automatic stay regulation and continued detention of Mr. Cesario Souza violate his substantive due process rights.

**B.  Procedural Due Process**

46.    Due process also requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Federal courts have consistently applied *Mathews* in the present context of DHS's automatic stay provision.  *See* cases cited *infra*. Mr. Cesario Souza received no such opportunity to be heard: Although he

received a full bond hearing in front of the IJ, the prosecutor's unilateral stay of the IJ's order rendered that hearing meaningless.

47.    To determine if a post-arrest hearing is sufficient to satisfy the Due Process Clause, courts consider three distinct factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### *Private Interest*

48.    Mr. Cesario Souza's private interest is the right to be free from government detention. "Being free from physical detention by one's own government 'is the most elemental of liberty interests.'" *Anicasio v. Kramer*, No. 4:25CV3158, 2025 WL 2374224, at *3 (D. Neb. Aug. 14, 2025) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004)). Claims for relief from detention by all persons including non-citizens "fall within the 'core' of the writ of habeas corpus." *Trump v. J.G.G.*, 145 S.Ct. at 1005.

49.    Mr. Cesario Souza's conditions of detention further support this compelling private interest. *See Günaydin v. Trump*, __ F. Supp. 3d __, File No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154, at *7 (D. Minn. May 21, 2025). He is in custody an hour away from his home and family, and, despite being in custody for a civil offense, he is detained with, and subject to, the same rules as those incarcerated at Plymouth for criminal offenses. *See Hernandez Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) ("[Petitioner] was incarcerated alongside criminal inmates at the Strafford County Jail for ten months. During that time, she was separated from her

fiancé and unable to maintain her employment.") (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) ("[Petitioner] was not 'detained'; he was, in fact, incarcerated under conditions indistinguishable from those imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes.")).

### *Risk of Erroneous Deprivation*

50.     Mr. Cesario Souza has a constitutional liberty interest in not being detained unless he has been found to be either a danger to the community or a risk of flight.  The automatic stay provision creates a large and obvious risk of erroneous deprivation of this liberty interest because the only individuals subject to the automatic stay are those who, like Mr. Cesario Souza, prevailed at their bond hearing.  In this case, the IJ found Mr. Souza was not a threat to public safety and with a $3,000 bond, was not a risk of flight.  Nevertheless, despite a neutral decision-maker finding that release upon the posting of a bond was warranted, the automatic stay provision allowed DHS, the litigant who had lost the motion, to unliterally deprive him of his liberty.  Other courts considering the automatic stay provision have found this problematic as well. *See Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025, at *14 (D. Md. Aug. 24, 2025) ("The automatic stay is a violent distortion of proper, legitimate process whereby the Government, as through by talisman, renders itself at once prosecutor and adjudicator."); *Garcia Jimenez v. Kramer*, No. 4:25CV3162, 2025 WL 2374223, at *3 (D. Neb. Aug. 14, 2025) ("The risk of deprivation is high because the only individuals subject to the automatic stay are those who, by definition, prevailed at their bond hearing."); *Zavala*, 310 F. Supp. 2d at 1078 ("The [automatic stay] procedure additionally creates a potential for error because it conflates the functions of adjudicator and prosecutor.").

51.     Additionally, the stay provision does not require DHS to consider or demonstrate

any individualized facts or show a likelihood of success on the merits. *See* 8 C.F.R §

1003.19(i)(2) (stating the stay is automatic and the bond "shall be stayed" upon filing of the form

EOIR-43). "[A] stay of an order directing the release of a detained individual is an 'especially'

extraordinary step, because '[i]n our society liberty is the norm, and detention prior to trial or

without trial is the carefully limited exception.'" *Gunaydin*, 2025 WL 1459154, at *9 (alteration

in original) (quoting *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L.Ed.2d

697 (1987)). Accord *Jacinto v. Trump*, No. 4:25CV3161, ___ F.Supp.3d ___, 2025 WL

2402271, at *3 (D. Neb. Aug. 19, 2025).  The automatic stay regulation "turns these well-

established procedural principles on their heads and carries a significant risk of erroneous

deprivation." *Jacinto*, 2025 WL 2402271, at *3 (quoting *Gunaydin*, 2025 WL 1459154, at *9).[1]

### *Government Interest*

52.     For purposes of this Petition, Mr. Cesario Souza will assume that ensuring that

persons subject to possible removal do not commit crimes or evade law enforcement during the

pendency of their removal proceedings presents a significant governmental interest.  *See*

*Gunaydin*, 2025 WL 1459154, at *10.  However, in Mr. Cesario Souza's case, as in all cases

where an IJ has ordered a detainee's release, a neutral decision-maker has already determined

that the detainee is neither a danger to the public nor a risk of flight. In addition, the government

may continue to pursue its appeal of the Immigration Judge's bond decision even after Mr.

Cesario Souza is released.

### Summary of the *Matthews* Factors

---

[1] The "probable value…of additional or substitute procedural safeguards," *Matthews*, 424 U.S. at 335, can further support a legal challenge to a detention order. In this case, ICE has an alternative procedure, i.e., seeking a discretionary stay from BIA.  See par. 42, *supra*.  However, for purposes of this Petition, Mr. Cesario Souza does not rely on the availability of this alternative procedure, because the risk of an erroneous deprivation is under *any* procedure is extremely high, given the release order entered on his behalf by an IJ.

53.     To summarize application of the three *Mathews* factors, Mr. Cesario Souza's

private interest is compelling; the risk of erroneous deprivation of that interest is extraordinarily

high; and the government interest has little if any weight under the facts of Mr. Cesario Souza's

case. *See* cases cited *supra*. Therefore, Mr. Cesario's incarceration violates procedural due

process.

**C.  Ultra Vires**

54.     Congress gave the Attorney General discretion to decide whether to release

detained noncitizens pending removal proceedings if they have not been convicted of certain

criminal offenses and are not linked to terrorist activities. *See* 8 U.S.C. § 1226(a). Congress has

also permitted the Attorney General to delegate detention determinations to "any other officer,

employee, or agency of the Department of Justice." 28 U.S.C. § 510. IJs are administrative law

judges within the Department of Justice and are thus properly delegated. By contrast, DHS is not

within the Department of Justice, but rather a separate executive department. *See* 6 U.S.C. § 111.

55.     The automatic stay regulation exceeds the authority given to the Attorney General

by Congress and unlawfully eliminates IJ's discretionary authority to make custody

determinations. "Because this back-ended approach effectively transforms a discretionary

decision by the [IJ] to a mandatory detention imposed by [DHS], it flouts the express intent of

Congress and is ultra vires to the statute." *Zavala*, 310 F. Supp. 2d at 1079.

56.     Therefore, 8 C.F.R. § 1003.29(i)(2) is invalid and Mr. Cesario Souza's detention

is ultra vires.

### FIRST CAUSE OF ACTION – UNLAWFUL DETENTION IN VIOLATION OF U.S. CONSTITUTION, FIFTH AMENDMENT – SUBSTANTIVE DUE PROCESS

57.     Mr. Cesario Souza realleges and incorporates the allegations contained in the

preceding paragraphs of the Petition as if fully set forth herein.

58.     The U.S. Constitution establishes the right to due process for all persons within the United States, including noncitizens, whether their presence here is lawful or unlawful.

59.     Mr. Cesario Souza's continued incarceration when he has been found to be neither a danger to the community nor a risk of flight upon posting a $3,000 bond constitutes a violation of substantive due process.

### SECOND CAUSE OF ACTION – UNLAWFUL DETENTION IN VIOLATION OF U.S. CONSTITUTION, FIFTH AMENDMENT – PROCEDURAL DUE PROCESS

60.     Mr. Cesario Souza realleges and incorporates the allegations contained in the preceding paragraphs of the Petition as if fully set forth herein.

61.     Mr. Cesario Souza is currently in the custody of Respondent under or by color of the authority of the United States – that is, detained at Plymouth at the direction of DHS.

62.     Due process requires the opportunity to be heard at meaningful time and in a meaningful manner. Mr. Cesario Souza has not received that opportunity here.

63.     Mr. Cesario Souza's liberty interest and the risk of erroneous deprivation of that interest far outweigh the government's interest, if any, in continued detention pursuant to an automatic stay. The automatic stay violates Mr. Cesario Souza's procedural due process rights.

### THIRD CAUSE OF ACTION – UNLAWFUL DETENTION IN VIOLATION OF STATUTE, 8 U.S.C. § 1226(a) -ULTRA VIRES REGULATION

64.     Mr. Cesario Souza realleges and incorporates the allegations set forth in the preceding paragraphs of the Petition as if fully set forth herein.

65.     Congress gave the Attorney General authority to detain or release noncitizens, pending their removal proceedings, under 8 USC § 1226(a). The Attorney General has delegated that authority to IJs.

66.     The automatic stay regulation, 8 C.F.R. § 1003.19(i)(2), purports to give DHS the

authority to unilaterally override the IJ's decision rendered pursuant to 8 U.S.C. § 1226(a). It is

therefore unlawful and *ultra vires*.

67.    Mr. Cesario Souza's detention pursuant to the automatic stay regulation is

unlawful and in violation of 8 U.S.C. 1226(a).

### *PRAYER FOR RELIEF*

Wherefore, Mr. Cesario Souza respectfully requests that the Court:

A.    Order the immediate release of Mr. Cesario Souza upon the posting of a $3,000 bond that

DHS shall accept, pending these proceedings;

B.    If Mr. Cesario Souza is not immediately released, order Respondents not to transfer Mr.

Cesario Souza out of this District during the pendency of these proceedings, to preserve

jurisdiction;

C.    Declare that Petitioner's detention violates the Fifth Amendment and is ultra vires in

violation of 8 U.S.C. § 1226(a).;

D.    Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to

immediately release Petitioner from custody in accordance with the bond order from IJ Ostrom, or,

in the alternative, order Respondents to show cause why this Petition should not be granted within

three days;

E.    Award Petitioner reasonable attorneys' fees and costs; and

F.    Grant any further relief the Court deems just and proper.

/

/

/

Respectfully submitted,

JACKSANDER CESARIO SOUZA

By his attorney,

*/s/ Julia Ciachurski*
Julia Ciachurski
BBO# 709052
Political Asylum/Immigration Representation (PAIR)
Project
98 N. Washington Street, Suite 106
Boston, MA 02114
(617) 453-3216
jciachurski@pairproject.org

*Pro bono counsel for Petitioner*

Dated:  September 5, 2025

## <u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>

I represent Petitioner, Jacksander Cesario Souza, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 5th day of September, 2025.


*/s/ Julia Ciachurski*
Julia Ciachurski