UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                           )
JACKSANDER CESARIO SOUZA,                                  )
                                                           )
            Petitioner,                                    )
                                                           )
    v.                                                     )    Civil Action No. 25-cv-12461-DJC
                                                           )
PATRICIA H. HYDE, et al.,                                  )
                                                           )
            Respondents.                                   )
                                                           )
_____)

## MEMORANDUM AND ORDER

**CASPER, C.J.**                                           **October 24, 2025**

### I.    Introduction

Having reviewed the Petition of Jacksander Cesario Souza ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 based on his detention, D. 1, Respondents' response to same, D. 8, and Petitioner's reply, D. 10, the Court ALLOWS the Petition insofar as it sought a release from the custody of ICE pursuant to 8 C.F.R. § 1003.19(i)(1) and (2) immediately upon his posting of the ordered bond, with no additional conditions beyond those imposed by the Immigration Judge in the July 17, 2025 bond order.  Respondents are also ENJOINED from denying Petitioner bond on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2).

### II.    Factual Background

Petitioner is a nineteen-year-old noncitizen who has been living in the United States since 2021.  D. 1 ¶ 20.  In 2021, Petitioner was arrested by U.S. Immigrations and Customs Enforcement ("ICE") and subsequently "released from custody."  D. 10 at 2.  Thereafter, the Department of Homeland Security ("DHS") initiated removal proceedings against Petitioner by issuing a Notice

to Appear ("NTA") with the Chelmsford Immigration Court.  D. 1-3 at 1; D. 10-1 at 2.  On June

12, 2025, ICE arrested Petitioner outside his home in Milford, Massachusetts.  Id. ¶ 24.  When

taken into custody, Petitioner was served a Notice of Custody Determination stating that "he was

being detained pursuant to INA § 236."  D. 1-3 at 4.  Petitioner remains detained by ICE at

Plymouth County Correctional Facility.  D. 1 ¶ 24.

At Petitioner's request, Petitioner had a custody redetermination hearing before an

immigration judge on July 17, 2025.  Id. ¶ 28; see D. 1-3 at 1.  DHS argued that he was subject to

mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  D. 1 ¶ 28.  The Immigration Judge granted

Petitioner's request for change in status, finding first that he was eligible for a bond hearing

because he was detained under 8 U.S.C. § 1226.  D. 1-3 at 1, 3-4.  The Immigration Judge next

found that DHS did not demonstrate that Petitioner posed a danger to the community, but did

demonstrate by a preponderance of the evidence that Petitioner was a flight risk and determined

that a $3,000 bond would mitigate Petitioner's flight risk and ensure his appearance at any future

hearings.  Id. at 5.

The next day, ICE filed a notice of intent to appeal that decision to the Board of

Immigration Appeals ("BIA").  D. 1 ¶ 30; D. 1-1.  ICE then timely appealed the bond decision.  D.

1 ¶ 30; D. 1-2.  Pursuant to 8 C.F.R. § 1003.19(i)(2), ICE's appeal had the effect of automatically

staying the Immigration Judge's decision, along with Petitioner's release from detention, for at

least 90 days, from ICE's notice of appeal, which is set to expire on October 29, 2025.  D. 10-1 at

2.  In the interim, ICE sought a second stay under the discretionary stay provision, 8 C.F.R. §

1003.19(i)(1), on October 9, 2025, which was granted the next morning by the BIA.  D. 10-1, 10-

4; D. 10 at 13.  Petitioner remains detained at the Plymouth County Correctional Facility due to

this automatic stay regulation.  D. 1 ¶¶ 13, 24.

On October 9, 2025, DHS moved for a discretionary stay of the Immigration Judge's custody redetermination decision with BIA, pending BIA's adjudication of their appeal of the decision. D. 10 at 4; D. 10-1 at 2. BIA granted the motion the next morning. D. 10 at 4; D. 10-2 at 2.

### III.    Discussion

In the Petition, Petitioner challenges his detention in this district pursuant to the stay regulation under 8 C.F.R. § 1003.19(i) (1), (2) and seeks relief from same. D. 1 at 13-15; D. 10 at 12-15. Accordingly, this Court has jurisdiction over the Petition as it concerns relief that Petitioner seeks challenging his continued detention. Kong v. United States, 62 F.4th 608, 614 (1st Cir. 2023) (noting that "we have held that district courts retain jurisdiction over challenges to the legality of detention in the immigration context").

### A.    Petitioner's Custody is Governed by 8 U.S.C. § 1226(a)

As an initial matter, this Court agrees with the Chelmsford Immigration Court and Petitioner that Petitioner's initial custody was governed by 8 U.S.C. § 1226(a) (which allows for discretionary determinations of custody before an immigration judge) and not 8 U.S.C. § 1225(b)(2). See D. 1-3 at 4; Jennings v. Rodriguez, 583 U.S. 281, 289 (2018) (discussing the distinction). That is reflected in the Notice of Custody Determination stating that "[Petitioner] was being detained pursuant to INA § 236," which is codified as 8 U.S.C. § 1226. See D. 1-3 at 4; D. 10 at 2. Respondents do not appear to dispute that 8 U.S.C. § 1226(a) applies to Petitioner's initial custody at this juncture, D. 8 at 1-9, and this determination aligns with other sessions of this Court that have concluded that the detention of noncitizens such as Petitioner, who are arrested and detained within the United States, is governed by 8 U.S.C. § 1226(a) and that Petitioner is thus entitled to a bond hearing and individualized determination of detention. De Andrade v. Moniz,

No. 25-cv-12455-FDS, 2025 WL 2841844, at *6 (D. Mass. Oct. 7, 2025) and cases cited; Sampiao
v. Hyde, No. 25-11981-JEK, 2025 WL 2607924, at *7-8 (D. Mass. Sept. 9, 2025); Doe v. Moniz,
No. 25-12094-IT, 2025 WL 2576819, at *4-6 (D. Mass. Sept. 5, 2025); Romero v. Hyde, No. 25-
11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025); Gomes v. Hyde, No. 25-cv-
11571-JEK, 2025 WL 1869299 (D. Mass. Jul. 7, 2025); Araujo Da Silva v. Pamela Bondi, et al.,
No. 25-CV-12672-DJC, 2025 WL 2969163 (D. Mass. Oct. 21, 2025).

### B.  Considering Procedural Due Process Challenge to Stay of Release

Nevertheless, and notwithstanding the Immigration Judge's order releasing him on bond,
Petitioner remains in ICE custody pursuant to the automatic stay regulation.  Petitioner contends
that his ongoing detention under that regulation abridges his procedural and substantive due
process rights, and that the regulation exceeds statutory authority delegated by Congress.  D. 1 ¶¶
38-56. The government responds that its application of the automatic stay regulation to Petitioner
is lawful and precludes his release pending BIA review of the Immigration Judge's bond order.  D.
8 at 5-8.

### 1.  Analyzing Challenge to Automatic Stay under 8 C.F.R. § 1003.19(i)(2)

As Respondents acknowledge in their opposition, D. 8 at 6 n.2, other sessions of this Court,
as well as other courts across the country, have determined that 8 C.F.R. § 1003.19(i)(2) violates
noncitizen's procedural due process under the Fifth Amendment, substantive due process under
the Fifth Amendment and is *ultra vires*.  See Sampiao, 2025 WL 2607924, at *9-12 (concluding
that 8 C.F.R. § 1003.19(i)(2) violates noncitizen's Fifth Amendment rights); Silva v. Larose, No.
25-CV-2329-JES-KSC, 2025 WL 2770639, at *3-5 (S.D. Cal. Sept. 29, 2025) (same); Quispe-
Ardiles v. Noem, No. 1:25-CV-01382-MSN-WEF, 2025 WL 2783800, at *7-10 (E.D. Va. Sept. 30,
2025) (same); Hasan v. Crawford, No. 1:25-CV-1408 (LMB/IDD), 2025 WL 2682255, at *9-13

(E.D. Va. Sept. 19, 2025) (same); Arce v. Trump, No. 8:25CV520, 2025 WL 2675934, at *6 (D. Neb. Sept. 18, 2025) (same); Alves da Silva v. US Immigr. & Customs Enf't, No. 25-CV-284-LM-TSM, 2025 WL 2778083, at *3 (D.N.H. Sept. 29, 2025) and cases cited; Arcos v. Noem, No. 4:25-CV-04599, 2025 WL 2856558, at *3 (S.D. Tex. Oct. 8, 2025) and cases cited; Maza v. Hyde, No. 1:25-CV-12407-IT, 2025 WL 2951922, at *3-5 (D. Mass. Oct. 20, 2025) (concluding 8 C.F.R. § 1003.19(i)(2) violates noncitizen's Fifth Amendment rights and is ultra vires); Quispe V. Crawford, No. 1:25-CV-1471-AJT-LRV, 2025 WL 2783799, at *7-9 (E.D. Va. Sept. 29, 2025) (same); Campos Leon v. Forestal, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3-5 (S.D. Ind. Sept. 22, 2025) (concluding 8 C.F.R. § 1003.19(i)(2) is ultra vires).

As Petitioner is subject to Section 1226(a)'s discretionary detention framework, he is entitled to the full procedural safeguards of the Due Process Clause of the Fifth Amendment. Sampiao, 2025 WL 2607924, at *9. To determine whether a form of civil detention violates a detainee's due process rights under the Fifth Amendment, courts apply the three-part balancing test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976). See Hernandez-Lara v. Lyons, 10 F.4th 19, 27-28 (1st Cir. 2021) (analyzing procedural due process challenge to the detention of noncitizen held pursuant to Section 1226(a) using the Mathews test); Sampiao, 2025 WL 2607924, at *9 (same). Under that test, a court must weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

First, as the government concedes, Petitioner's interest in freedom from physical detention is "concededly serious."  D. 8 at 5.  A person's interest in freedom from physical detention "is the most elemental of liberty interests," Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004), and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects," Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  Here, Petitioner is suffering the deprivations that come with detention as "[h]e is in custody an hour away from his home and family, and, despite being in custody for a civil offense, he is detained with, and subject to, the same rules as those incarcerated at Plymouth for criminal offenses," D. 1 ¶ 49.  See Maza, 2025 WL 2951922, at *3 and cases cited; Hernandez-Lara, 10 F.4th at 28.  The first Mathews factor thus weighs in favor of granting the Petition.

Second, the automatic stay regulation's procedures "are likely to erroneously deprive people in [Petitioner]'s position of their liberty because only those noncitizens who have already demonstrated their entitlement to release from detention in court are subject to the regulation," Sampiao, 2025 WL 2607924, at *10, and " Petitioner remains detained solely because DHS, the losing party in the proceedings before the Immigration Judge, has filed an appeal of the release order."  Maza, 2025 WL 2951922, at *4; Sampiao, 2025 WL 2607924, at *10 (concluding same). Indeed, the automatic stay "allows the government to bypass its burden of proof at bond hearings and usurp the role of the Immigration Judge," Sampiao, 2025 WL 2607924, at *10 (collecting cases recognizing same), all while "invert[ing] the traditional burdens and standards governing requests for stays pending appeal," id. at *11 (citing Nken v. Holder, 556 U.S. 418, 433-34 (2009)).

Thus, the second Mathews factor also weighs in favor of granting the Petition.

Third, while "[t]he government does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community . . .

noncitizens subject to the automatic stay regulation have been deemed, subject to a bond order, to *not* pose such risks." Sampiao, 2025 WL 2607924, at *12 (emphasis in original); Maza, 2025 WL 2951922, at *4 (recognizing same).  Thus, the third Mathews factor also weighs in favor of granting the Petition.

As the balance of the Mathews factors favor Petitioner, his detention pursuant to 8 C.F.R. § 1003.19(i)(2) violates his procedural due process rights under the Fifth Amendment, and he is entitled to immediate release as to the automatic stay of his release.  Having so concluded, the Court need not reach Petitioner's substantive due process and *ultra vires* challenges as to 8 C.F.R. § 1003.19(i)(2).

   *2.  Analyzing Challenge to Discretionary Stay under 8 C.F.R. § 1003.19(i)(1)*

Although the record reflects that the automatic stay of Petitioner's release extends to October 29, 2025, D. 10-1 at 2, it appears that Respondents moved for a discretionary stay of same under 8 C.F.R. § 1003.19(i)(1) on October 9, 2025 at 4:58 p.m.  D. 10 at 12; D. 10-1.  According to Petitioner, he did not receive notice of the motion until the next morning at 8:17 a.m.  D. 10 at 12; see D. 10-3.  An immigration judge allowed this motion at 10:10 a.m. the same day without giving Petitioner an opportunity to be heard and by a tersely worded decision:

> The Department of Homeland Security (DHS) has filed a motion for an emergency stay of the Immigration Judge's bond order, issued on July 17, 2025, ordering the respondent released from custody upon posting a bond of $3,000. After consideration of all information, the Board has concluded that the motion for emergency stay of the bond order will be granted. ORDER: The motion for stay of execution of the bond order is granted.

D. 10-2 at 2; D. 10 at 13; D. 10-4.  Assuming that Petitioner's continued detention is now pursuant to a discretionary stay of release under 8 C.F.R. § 1003.19(i)(1), the Court does not see how the balance of Mathews factors is any different than its analysis above under 8 C.F.R. § 1003.19(i)(2), particularly where "[the discretionary stay] was granted . . . essentially on an *ex parte* basis" and

7

"[l]ike the automatic stay, the discretionary stay was issued without any indication of an individualized assessment of the need for a stay." J.M.P. v. Paul Arteta, et al., No. 25 CIV. 4987 (DEH), 2025 WL 2984913, at *15 (S.D.N.Y. Oct. 23, 2025) (concluding same). Indeed, "the BIA's grant of DHS's motion for stay was entered so close in time to DHS's motion that it appears on [Petitioner's] immigration court docket before the acceptance of DHS's motion for stay." D. 10 at 13; D. 10-3, 10-4, 10-55. It is not clear in the order upon which "information" the immigration judge relied to make a determination in the short span of time in which Petitioner was not permitted to respond. Thus, it is not clear that it could "have conducted an individualized assessment of all the circumstances of the case." J.M.P., 2025 WL 2984913, at *15. Accordingly, "[t]he 'discretionary' stay here was essentially automatic in all respects other than its name" and the considerations under the Mathews factors remains the same. Id.

The considerations under the first Mathews factor are the same as above. Moreover, "[g]iven his already prolonged detention, [Petitioner]'s private interest is severely affected by the indefinite length of his continued confinement under the stay." Id. at *16. Likewise, the considerations under the second Mathews factor remain. Although courts have noted the potential for a discretionary stay under 8 C.F.R. § 1003.19(i)(1) to mitigate procedural due process concerns present under 8 C.F.R. § 1003.19(i)(2), see, e.g., Sampiao, 2025 WL 2607924, at *11 (collecting cases), "the discretionary stay, as it played out here, did not solve this problem," J.M.P., 2025 WL 2984913, at *17. Given the circumstances here, Petitioner was provided no meaningful opportunity to respond to DHS' motion for a discretionary stay. Id. at *17; cf. El-Dessouki v. Cangemi, No. CIV 063536 DSD/JSM, 2006 WL 2727191, at *3 (D. Minn. Sept. 22, 2006) (finding second Mathews factor weighs in favor of government where petitioner filed a response to government's motion before BIA rendered its opinion).

8

The risk of erroneous deprivation is further exacerbated by the fact that the discretionary stay regulation fails to articulate "any standards for individualized consideration of a stay application." Id. at *18 (citing 8 C.F.R. § 1003.19(i)(1)); see 8 C.F.R. § 1003.19(i)(1) (stating only that "the BIA "has the authority to stay the order of an immigration judge redetermining the conditions of custody of an alien when the Department of Homeland Security appeals the custody decision or on its own motion"). DHS cites no applicable standard in their motion for discretionary stay, D. 10-1 at 1-4, nor does BIA appear to "impose[] meaningful standards on the grant or denial of a stay," whether the "traditional stay standard" or otherwise, J.M.P., 2025 WL 2984913, at *17 (citing Nken, 556 U.S. at 434 (explaining that the traditional stay standards are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies")); see D. 10-2 at 2. Moreover, the order contained no discussion or indication of any individual circumstance in Petitioner's case. Id. Under these circumstances, "cases suggesting that, in light of due process concerns, a discretionary stay is normally a sound alternative to an automatic one are inapposite here." See J.M.P., Petitioner, 2025 WL 2984913, at *19. Thus, the second Mathews factor continues to weigh in Petitioner's favor.

The third Mathews factor also is undisturbed. The government's interest in preventing danger continues to be significant, and, as our sister courts have noted, "a discretionary stay, were it granted with notice and a meaningful opportunity to be heard, on a complete record, employing clear standards akin to the traditional stay factors, and with a reasonably definite expiration date, would likely satisfy due process." Id.; see Maza, 2025 WL 2951922, at *4. Here, however, without

any such meaningful measures, the Court does not see how the third <u>Mathews</u> factor under the discretionary stay as issued in this case differs from that of the automatic stay, as explained above.

Accordingly, as "the discretionary stay process in this case presents the same due process concerns as those identified in cases where the automatic stay was held unconstitutional," <u>J.M.P.</u>, 2025 WL 2984913, at *15 (concluding same), the balance of the <u>Mathews</u> factors remains the same.

## IV.    Conclusion

For the foregoing reasons, the Petition for a writ of habeas corpus under 28 U.S.C. § 2241 based on the continued stay of his release under 8 C.F.R. § 1003.19(i) (1), (2), D. 1, is ALLOWED as it sought a release from the custody of ICE immediately upon Petitioner's posting of the ordered bond, with no additional conditions beyond those imposed by the Immigration Judge in the July 17, 2025 bond order.  Respondents are also ENJOINED from denying Petitioner bond on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2).

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge